UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CURRY W. FORBES,

       Petitioner,

    v.                                                  20-CV-1419-LJV
                                                              DECISION & ORDER
MERRICK GARLAND,[1] *et al.*,

       Respondents.[2]

---

      Curry W. Forbes has been detained in the custody of the United States

Department of Homeland Security since March 18, 2019—25 months.  Docket Item 7 at

4.  On October 1, 2020, Forbes filed a *pro se* petition for a writ of habeas corpus under

28 U.S.C. § 2241, challenging the validity of his detention at the Buffalo Federal

Detention Facility in Batavia, New York.  Docket Item 1.  On November 24, 2020, the

respondents answered the petition.  Docket Items 9, 7.  Forbes has not replied and the

time to do so has now passed.

      For the reasons that follow, this Court grants Forbes's petition in part.

---

[1] The caption has been updated under Federal Rule of Civil Procedure 25(d). The Clerk of the Court shall substitute Merrick Garland for William Barr and Alejandro Mayorkas for Chad Wolf on the docket.

[2] In its memorandum of law, the government argues that the only proper respondent in this matter is Jeffrey Searls, "the person with direct control over [Forbes]." Docket Item 7 at 21-22.  It is clear that, at the very least, Searls "has the *immediate custody* of the party detained, with the power to produce the body of such party before the court or judge, [so] that he may be liberated if no sufficient reason is shown to the contrary."  *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (emphasis in original) (quoting *Wales v. Whitney*, 114 U.S. 564, 574 (1885)).  "Because resolution of who is the proper respondent will not affect the disposition of this petition, the Court will not address it further."  *Khemlal v. Shanahan*, 2014 WL 5020596, at *2 n.3 (S.D.N.Y. Oct. 8, 2014).

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts, taken from the record, come largely from filings with the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE").

Forbes is a native and citizen of the Turks and Caicos Islands.  Docket Item 7 at 2.  He entered the United States as a visitor in 1983, and he became a lawful permanent resident in 1996.  *Id.*  Soon after, in 1997, Forbes was convicted of felony drug distribution.  *Id.* at 3.  After Forbes applied for immigration benefits in 2011— alerting the agency to his criminal record—ICE determined that he was subject to removal.  *Id.*

On May 17, 2011, DHS issued a "Notice to Appear," charging that Forbes was subject to removal because of his "convict[ion] of a crime related to drug trafficking . . . [and] violat[ion] of a law relating to a controlled substance."  *Id.*  On March 28, 2012, Forbes was taken into custody by ICE officers and released on his own recognizance. *Id.*  Between 2014 and 2018, Forbes was arrested for and convicted of additional crimes—mainly drug offenses.  *Id.* at 3-4.  And during that time, ICE lodged additional charges of removability against him based on a September 2017 drug conviction.  *Id.* at 4.

After completing a criminal sentence, Forbes was taken into ICE custody on March 18, 2019, and he has remained in custody since then.  *Id.*  Forbes's case has a long and convoluted procedural history, including representation by two different immigration attorneys and delays caused by the COVID-19 pandemic.  *See* Docket Item 7 at 5-7.  He twice has appealed an immigration judge's ("IJ's") order of removal in his

case, and the most recent appeal is pending before the Board of Immigration Appeals ("BIA").  *See* Docket Item 10.

## DISCUSSION

### I.  HABEAS PETITION

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the laws or treaties of the United States.'"  *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).  The government maintains that Forbes is validly detained under 8 U.S.C. § 1226(c) as a noncitizen with pending removal proceedings convicted of the criminal sale of a controlled substance (cocaine), an offense relating to the illicit trafficking of a controlled substance, and a violation of law relating to a controlled substance.  Docket Item 6 at ¶¶ 11, 23; *see also* Docket Item 10 (noting that the petitioner filed a notice of appeal with the BIA, and that he remains in detention pursuant to 8 U.S.C. § 1226(c)).

Forbes disagrees on three grounds.  First, he contends that he "is subject to a final [o]rder of [r]emoval" and that his detention for over six months "exceed[s] the reasonable limits of the [g]overnment's authority."  Docket Item 1 at 6 (citing *Zadvydas v. Davis*, 533 U.S. 678 (2001)).  The Court construes Forbes's first claim as arguing that his continued detention violates 28 U.S.C. § 1231(a)(6) because there is "good reason to believe that there is no significant likelihood of [his] removal in the reasonably foreseeable future."[3]  *See Zadvydas*, 533 U.S. at 701.  Second, Forbes argues that his

---

[3] Because Forbes is proceeding *pro se*, this Court holds his submissions "to less stringent standards than formal pleadings drafted by lawyers."  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

"indefinite" detention violates his right to substantive due process under the Fifth Amendment to the United States Constitution.  Docket Item 1 at 9.  And third, he argues that his detention without "meaningful review" violates his right to "procedural due process" under the Fifth Amendment.  *Id*. at 10.

## II.  STATUTORY CHALLENGE

This Court begins by considering the statutory basis for Forbes's detention so that it can evaluate his first challenge, alleging that his continued detention violates 8 U.S.C. § 1231 as interpreted by the Supreme Court in *Zadvydas*.  Forbes states that he "is subject to a final [o]rder of [r]emoval," Docket Item 1 at 6, but he also seems to acknowledge that his detention is governed by 8 U.S.C. § 1226(c), *see id.* at 6-7 (making legal arguments concerning detention under section 1226(c)).  The respondents contend that Forbes is detained under section 1226(c).  *See* Docket Item 7 at 2; Docket Item 10 (explaining that because Forbes filed a notice of appeal with the BIA, "his detention remains pursuant to § 1226(c)").

"Broadly speaking, section 1226 governs the detention of immigrants who are not immediately deportable."  *Hechavarria v. Sessions*, 891 F.3d 49, 57 (2d Cir. 2018).  Section 1231, on the other hand, "addresses the 'removal period' for immigrants facing deportation."  *Id*. at 53.  "[T]he 'removal period' [is] the term used in the statute to describe the 90-day period following an order of removal during which 'the Attorney General shall remove the [noncitizen].'"  *Id*. at 54 (quoting 8 U.S.C. § 1231(a)(1)(A)).

The statute explicitly defines the beginning of the removal period as occurring "on the latest of the following:

(i) The date the order of removal becomes administratively final.

4

(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order.

(iii) If the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement."

*Id*. at 54-55 (quoting 8 U.S.C. § 1231(a)(1)(B)).

Here, Forbes is not subject to a final order because his appeal of his order of removal is pending with the BIA.  *See* Docket Item 10.  The Court therefore agrees with the respondents that Forbes's detention is governed by 8 U.S.C. § 1226(c).  Because Forbes is not detained under section 1231(a), this Court rejects his argument that his detention violates that provision as interpreted by the Supreme Court in *Zadvydas*.

### III. DUE PROCESS

Forbes also alleges that his continued detention violates the Due Process Clause.  *See* Docket Item 1 at 9-10.  The Fifth Amendment's Due Process Clause forbids the federal government from depriving any "person . . . of . . . liberty . . . without due process of law."  U.S. Const. amend. V.  The Supreme Court "has held that the Due Process Clause protects individuals against two types of government action."  *United States v. Salerno*, 481 U.S. 739, 746 (1987).  "So-called 'substantive due process' prevents the government from engaging in conduct that shocks the conscience, . . . or interferes with rights implicit in the concept of ordered liberty."  *Id*. (citations omitted).  "When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner."  *Id*.  "This requirement has traditionally been referred to as 'procedural' due process."  *Id*.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."

*Zadvydas*, 533 U.S. at 690.  "[G]overnment detention violates that Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections . . . or, in certain special and narrow nonpunitive circumstances, . . . where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint."  *Id*. (emphasis in original) (citations omitted).  Other than those unique, special, and narrow circumstances, "[o]nly a jury, acting on proof beyond a reasonable doubt, may take a person's liberty.  That promise stands as one of the Constitution's most vital protections against arbitrary government."  *United States v. Haymond*, 139 S. Ct. 2369, 2373 (2019).

"[Noncitizens], even [noncitizens] whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth . . . Amendment[ ]."  *Plyer v. Doe*, 457 U.S. 202, 210 (1982); *see also Shaughnessey v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1954) ("It is true that [noncitizens] who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law.").  At the same time, Congress has "broad power over naturalization and immigration, [permitting it to] make[ ] rules that would be unacceptable if applied to citizens."  *Demore v. Kim*, 538 U.S. 510, 521 (2003) (quoting *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976)).

### A.    Substantive Due Process

Forbes argues that his detention violates his right to substantive due process. Docket Item 1 at 9-10.  He has been in DHS custody since March 18, 2019—25

months.  *See* Docket Item 7 at 4.  But this Court cannot say that detention that long violates due process.  *See Sanusi v. I.N.S.*, 100 F. App'x 49, 51 (2d Cir. 2004) (summary order) (determining that six-year detention did not violate due process). Indeed, detention under section 1226 may serve the government's compelling interests in both "preser[ving] the government's ability to later carry out its broader responsibilities over immigration matters," *Doherty v. Thornburgh*, 943 F.2d 204, 211 (2d Cir. 1991), and preventing crime by arrestees who pose a danger to the safety of the community, *see Salerno*, 481 U.S. at 749.  Although there comes a time when the length of a noncitizen's detention pending removal violates due process regardless of the procedural protections afforded, *see Salerno*, 481 U.S. at 747 n.4, that time has not yet come here.

> **B.    Procedural Due Process**

Forbes also challenges the procedural safeguards that apply to his continued detention.  *See* Docket Item 1 at 10.  The Due Process Clause is not offended by the mandatory detention of noncitizens for the "*brief period necessary* for their removal proceedings," *Demore*, 538 U.S. at 513 (emphasis added), but may be violated by detention beyond that "brief" period, depending on the balance of the individual's and the government's interests, *see, e.g.*, *id.* at 532 (Kennedy, *J.*, concurring) ("[A] lawful permanent resident . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention bec[omes] unreasonable or unjustified."); *see also Landon v. Plasencia*, 459 U.S. 21, 34 (1982) ("The constitutional sufficiency of procedures provided in any situation, of course, varies with the circumstances.").

For that reason, this Court "has evaluated procedural due process challenges to immigration detention with a two-step inquiry." *Hemans*, 2019 WL 955353, at *5. "A[t] the first step, the Court considers whether the [noncitizen's] detention has been unreasonably prolonged." *Id*. "If it has not, then there is no procedural due process violation." *Id*. "But if it has, the Court proceeds to step two and 'identifies the specific dictates of due process' by considering the *Mathews v. Eldridge* factors." *Id*. (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). "If the government has not provided the procedural safeguards dictated by the *Mathews* factors to a [noncitizen] subject to unreasonably prolonged detention, then his continued detention violates procedural due process." *Id*.

### 1.      Forbes's Detention

"[W]hen weighing the lawfulness of continued detention of a [noncitizen] under the Due Process Clause," several factors determine whether detention is unreasonably prolonged. *Jamal A. v. Whitaker*, 2019 WL 549722, at *3 (D. Minn. Jan. 22, 2019). This Court, for example, has considered "(1) the total length of detention to date; (2) the conditions of detention; (3) delays in the removal proceedings caused by the parties; and (4) the likelihood that the removal proceedings will result in a final order of removal." *Hemans*, 2019 WL 955353, at *6.

First, and most important, courts consider the length of detention. Forbes has been in DHS custody since March 18, 2019—25 months. *See* Docket Item 7 at 4. "As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing." *Muse v. Sessions*, 2018 WL 4466052, at *4 (D. Minn. Sept. 18, 2018) (and cases cited therein). In fact, courts have found detention even

shorter than a year to be unreasonably prolonged as part of a procedural due process analysis.[4]

In *Demore*, the Supreme Court upheld the constitutionality of section 1226(c), relying on the "very limited time of . . . detention at stake" and noting that "in the majority of cases[, section 1226(c) detention] lasts less than the 90 days . . . considered presumptively valid in *Zadvydas*." *Demore*, 538 U.S. at 529 & n.12; *see also id.* ("[I]n 85% of the cases in which [noncitizens] are detained pursuant to [section] 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days.  In the remaining 15% of cases, in which the [noncitizen] appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter." (citations omitted)).

Forbes's 25-month detention far exceeds the four-month average cited in *Demore* and is more than twice the one-year touchstone that many courts use.  The

---

[4] *See, e.g.*, *Sophia v. Decker*, 2020 WL 764279, at *4 (S.D.N.Y. Feb. 14, 2020) (approximately seven months); *Vargas v. Beth*, 2019 WL 1320330, at *8 (E.D. Wis. Mar. 22, 2019) (approximately nine and a half months); *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) (over seven months and over nine months by the next removal-related hearing); *Hernandez v. Decker*, 2018 WL 3579108, at *1, *12 (S.D.N.Y. July 25, 2018) (nine months); *Sajous v. Decker*, 2018 WL 2357266, at *1, *12 (S.D.N.Y. May 23, 2018) (over eight months); *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 720 (D. Md. 2016) (exceeding ten months); *see also Sopo v. U.S. Attorney General*, 825 F.3d 1199, 1218 (11th Cir. 2016) ("[A] criminal [noncitizen's] detention without a bond hearing may often become unreasonable by the one-year mark, depending on the facts of the case.").  *But cf. Minaya-Rodriguez v. Barr*, 459 F. Supp. 3d 488, 497 (W.D.N.Y. 2020) (noting that "procedural due process claims by petitioners detained for 6 to approximately 12 months while awaiting final orders in their immigration proceedings generally do not succeed—unless the government caused extreme delay or engaged in dilatory conduct").

length of Forbes's detention therefore strongly supports his argument that his detention without an individualized bond hearing has been unreasonably prolonged.

Second, courts consider the conditions of detention.  Whether "the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention" factors into the reasonableness of Forbes's detention.  *Sajous v. Decker*, 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018).  "The more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing."  *Muse*, 2018 WL 4466052, at *5.

The government has submitted the declaration of a BFDF employee regarding the conditions of Forbes's detention.  *See* Docket Item 9-3.  In that declaration, the government avers that the facility is unlike a prison because "most persons . . are not locked in a cell," *id.* at ¶ 8; they "do not face the same level of restrictions typical for someone held at a prison," *id.* at ¶ 7; and they "ordinarily may move throughout the BFDF without being required to wear handcuffs or legcuffs," *id.* at ¶ 11.  "Six of the dorm units are open-dorm style," but three others—for detainees with criminal histories or female detainees—have cell doors that close at night.  *Id.* at ¶ 8.  And "persons held at BFDF [are] required to wear . . . restraints . . . when being booked in or booked out" or when they are "facing discipline [and] are brought to the Special Housing Unit ("SHU")." *Id.* at ¶ 11.

Because of the cells, restraints, and discipline in the SHU, conditions at BFDF certainly "resemble penal confinement" for at least some persons detained there.  *Muse*, 2018 WL 4466052, at *5.  And while the record contains no facts about the particular conditions of Forbes's confinement, he may well at least sometimes be locked in a cell

because, as the government highlights, he has a criminal history.  *See, e.g.*, Docket Item 7 at 2 ("Forbes is a convicted felon" who has "had numerous encounters with law enforcement agencies").  So the government has not shown that Forbes's detention is "meaningfully different from [detention in] a penal institution."  *Sajous*, 2018 WL 2357266, at *11.  This factor therefore weighs in Forbes's favor as well.

Third, courts consider whether the detainee has prolonged his own detention. The Second Circuit has found that this factor weighs against finding detention unreasonable when a noncitizen has "substantially prolonged his stay by abusing the processes provided to him" but not when "an immigrant . . . [has] simply made use of the statutorily permitted appeals process."  *Hechavarria*, 891 F.3d at 56 n.6 (first quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)).  As the Sixth Circuit has noted, "appeals and petitions for relief are to be expected as a natural part of the process.  A [noncitizen] who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him."  *Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003) (cited in *Hechavarria*, 891 F.3d at 56 n.6).  Indeed,

> although a [noncitizen] may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take.  The mere fact that a [noncitizen] has sought relief from deportation does not authorize the [government] to drag its heels indefinitely in making a decision.  The entire process, not merely the original deportation hearing, is subject to the constitutional requirement of reasonability.

*Id*.

Here, the respondents argue that "the majority of [the time Forbes has been in detention] is due to [his] own actions and choices."  Docket Item 7 at 13, 14 (arguing that Forbes "is solely responsible for delays amounting to over 9 months"), 17 (arguing

11

that Forbes is responsible for "delays amount[ing] to nearly 11 months").  And it is true

that Forbes may have prolonged his detention by causing some of the delay in his

removal.  But any delay that Forbes may have caused totals far less than 11 months.

Forbes's original removal hearing was scheduled for May 6, 2019.  Docket Item 7

at 4.  Because of new criminal convictions that could affect the relief available to him,

the hearing was rescheduled for May 20, 2019.  *Id.* at 5.  At that hearing, Forbes's

counsel questioned his competency, and the hearing was adjourned until July 8, 2019.

*Id.*  Forbes's counsel, however, failed to file the necessary motion for a competency

hearing, prompting another adjournment until July 22, 2019.  *Id.*  A competency hearing

was eventually scheduled for July 30, 2019, but Forbes's counsel failed to appear for

the hearing in person.  *Id.*  The IJ then rescheduled the hearing for August 9, 2019, and

issued written instructions for counsel to attend.  *Id.*  Counsel subsequently was granted

two continuances before again failing to appear on September 25, 2019.  *Id.*  On

October 15, 2019, the IJ found Forbes to be competent, and counsel requested

additional time to withdraw before the next hearing on November 25, 2019.  *Id.* at 5-6.

New counsel appeared at the November 25th hearing and was granted additional

time to file an updated motion for relief.  *Id.* at 6.  At the next hearing, on March 17,

2020, counsel requested a continuance due to difficulties stemming from the COVID-19

pandemic.  *Id.*  Finally, on April 16, 2020, Forbes had his removal hearing, after which

the IJ ordered him removed to Turks and Caicos.  *Id.*  Forbes timely appealed that

decision to the BIA and was granted one extension of time to file briefing.  *Id.* at 7.  The

BIA ultimately remanded the matter for further proceedings, which were held on

November 9, 2020.  *Id.*  Forbes again appealed the IJ's decision, and that appeal is still

pending.  *See* Docket Item 10.

The Court does not agree with the respondents that "[all of] the delays were

avoidable and fully due to [Forbes]'s actions."  Docket Item 7 at 14.  In fact, a significant

amount of the delay was the direct result of circumstances outside of Forbes's control,

such as the repeated failures by his first immigration attorney to file papers and appear

for hearings as well as the COVID-19 pandemic.  Although Forbes may have caused

some of the delay, he has not "abus[ed] the processes provided to him."  *See*

*Hechavarria*, 891 F.3d at 56 n.6 (quoting *Nken*, 556 U.S. at 436).  And even excluding a

delay of 11 months—the longest amount of time the respondents allege—Forbes's total

detention still would be more than a year.  Therefore, the third factor also weighs in

Forbes's favor.

Finally, courts consider the likelihood that the removal proceedings will result in a

final order of removal.  Because Forbes's claims remain pending before the BIA, this

Court declines to weigh their merits.  But it is worth noting that the BIA already has

remanded Forbes's case once.  *See* Docket Item 7 at 7.

After balancing all these factors, this Court finds that Forbes's detention clearly

has been unreasonably prolonged.  Therefore, this Court turns to the second step of the

two-part inquiry to determine what remedy his unreasonably-prolonged detention

demands.

## 2.     The Process Due to Forbes

"The fundamental requirement of due process is the opportunity to be heard 'at a

meaningful time and in a meaningful manner.'"  *Mathews*, 424 U.S. at 333 (quoting

*Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors," *id.* at 335, namely: "(A) the private interest affected; (B) the risk of erroneous deprivation of that interest through the procedures used; and (C) the governmental interest at stake." *Nelson v. Colorado*, 137 S. Ct. 1249, 1255 (2017).  Here, that analysis leads to the conclusion that Forbes's continued detention without an individualized hearing, at which the government must justify his continued detention by clear and convincing evidence, fails to "comport with the 'fundamental fairness' demanded by the Due Process Clause." *See Schall v. Martin*, 467 U.S. 253, 263 (1984).

Forbes's interest in his freedom pending the conclusion of his removal proceedings deserves great "weight and gravity."  *Addington v. Texas*, 441 U.S. 418, 427 (1979).  Forbes has an obvious interest in his "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint."  *Zadvydas*, 533 U.S. at 690.  Moreover, while "[t]he private interest here is not liberty in the abstract, but liberty *in the United States*," *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999) (emphasis in original), Forbes has not conceded his deportability, and the resolution of that issue remains pending before the BIA.  In fact, his interest in liberty *in the United States* must indeed be strong for him to subject himself to unreasonably-prolonged detention while contesting his deportability.  *See Fremont v. Barr*, 2019 WL 1471006, at *6 n.7 (W.D.N.Y. Apr. 3, 2019).

And there appears to be good reason for that strong interest.  The record indicates that Forbes's child, his four brothers and sisters, and his mother are United States citizens or otherwise lawfully in the country.  *See* Docket Item 6-1 at 72.  These

family members live not in Turks and Caicos, where the government wishes to send him, but in the United States, where Forbes himself has lived since he was six years old. *See id.* Thus, if Forbes chose not to challenge his removal, he would "lose the right to rejoin [his] immediate family, a right that ranks high among the interests of the individual." *Landon*, 459 U.S. at 34.

This Court recognizes that the government's interest in detaining Forbes also may be strong. The government contends that Forbes's risk of flight and disregard for the law justify his continued detention. *See* Docket Item 7 at 20. In fact, Forbes is detained under 8 U.S.C. § 1226(c), which applies to noncitizens who fall "into one of several enumerated categories involving criminal offenses and terrorist activities." *Jennings*, 138 S. Ct. at 837. "[Noncitizens] detained under [that] authority are not entitled to be released under any circumstances other than those expressly recognized by the statute."[5] *Id*. at 846. Thus, in mandating the detention of criminal noncitizens, the statute reflects a congressional purpose of reducing the risk of flight and danger to the community. *See Demore*, 538 U.S. at 518-19 (explaining that Congress found that "deportable criminal [noncitizens] who remained in the United States often committed more crimes before being removed" and that "20% of deportable criminal [noncitizens] failed to appear for their removal hearings").[6] "The government's interest in preventing

---

[5] The exception from mandatory detention is a "limited authorization for release for witness-protection purposes," *Jennings*, 138 S. Ct. at 846, not applicable here.

[6] The Court noted that this number included noncitizens who were released from custody *without* an individualized bond hearing. *Demore*, 538 U.S. at 519 n.4 ("Although the Attorney General had the authority to release these [noncitizens] on bond, it is not clear that *all* of the [noncitizens] released were in fact given individualized bond hearings." (emphasis in original)).

crime by arrestees is both legitimate and compelling." *Salerno*, 481 U.S. at 749.  And general concerns about the risk of flight highlight the government's compelling interest in preserving its "ability to later carry out its broader responsibilities over immigration matters." *Doherty*, 943 F.2d at 211.

### 3.   The Procedures Used Thus Far

When Forbes was taken into custody, a notice of custody determination informed him that he would be detained pending the outcome of his removal proceedings.[7]  *See* Docket Item 7 at 4, 10.  In a letter dated March 24, 2020, Forbes's counsel asked that he be released from custody.  *Id.* at 6.  ICE denied Forbes's request because he had "failed to show that he was neither a flight risk nor a danger to the community."  *Id.*  On April 27, 2020, Forbes again asked to be released in light of new case law regarding the COVID-19 pandemic.  *Id.*  About a month later, that request was also denied because Forbes "failed to [show] . . . any significant changed circumstances."  Docket Item 6-1 at 83-84.

This Court concludes that in light of the procedures used thus far, there is a significant risk of an erroneous deprivation to Forbes's liberty interests.  Section 1226(c) prohibits the government from offering a detainee the opportunity to challenge at a hearing whether he is, in fact, a danger or a flight risk.  *Jennings*, 138 S. Ct. at 846. Now that Forbes's detention has become unreasonably prolonged, due process requires *some* opportunity to be heard "at a meaningful time and in a meaningful

---

[7] A custody hearing was scheduled in Forbes's case for May 20, 2019.  *See* Docket Item 9-1 at ¶ 31.  After a number of continuances and delays by Forbes's first immigration attorney, it is unclear from the record whether that hearing ever took place. *See id.* at ¶¶ 32-42.

manner," *Armstrong*, 380 U.S. at 552, to challenge the statute's assumptions as applied to him.

An opportunity to be heard in a meaningful manner necessarily requires a hearing that "satisfies the constitutional minimum of fundamental fairness." *Santosky v. Kramer*, 455 U.S. 745, 756 n.8 (1982) (citation omitted). When the government seeks the civil detention of a person to effect a compelling regulatory purpose, it must show by clear and convincing evidence that such detention is necessary to serve that compelling interest. *See Foucha v. Louisiana*, 504 U.S. 71, 81-83 (1992); *Addington*, 441 U.S. at 432-33; *see also Santosky*, 455 U.S. at 756 (explaining that the "clear and convincing evidence" standard applies "when the individual interests at stake in a . . . proceeding are both 'particularly important' and 'more substantial than mere loss of money'" (quoting *Addington*, 441 U.S. at 424)). That standard applies equally here.

To sustain the prolonged detention of a noncitizen subject to removal proceedings based on its general interests in immigration detention, the "[g]overnment [is] required, in a 'full-blown adversary hearing,' to convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person," *Foucha*, 504 U.S. at 81 (quoting *Salerno*, 481 U.S. at 751), or ensure that the noncitizen will appear for any future proceeding.[8] This requires consideration of less restrictive alternatives to detention. *See id.*; *cf. United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816 (2000) ("When a plausible, less

---

[8] As this Court explained in *Hemans*, 2019 WL 955353, at \*8 n.7, a pretrial detainee's right to a speedy trial distinguishes the interests supporting the evidentiary standard traditionally applicable to flight-risk determinations for pretrial detention purposes from what is required after an unreasonably-prolonged immigration detention.

restrictive alternative is offered to a" regulation burdening a constitutional right, "it is the Government's obligation to prove that the alternative will be ineffective to achieve its goals.").

### C.    Conclusion

Forbes's section 1226(c) detention has been unreasonably prolonged.  Because section 1226(c) does not require an individualized hearing in which the government must demonstrate by clear and convincing evidence that no conditions of release can reasonably serve the government's compelling regulatory interests in detaining him, it is unconstitutional as applied to him.  As such, his continued detention violates the Due Process Clause.

Forbes must be released unless, no later than **14 calendar days from the date of this decision and order**, the government demonstrates by clear and convincing evidence before a neutral decisionmaker that Forbes's continued detention is necessary to serve a compelling regulatory purpose—such as preventing flight or protecting others or the community.  The decisionmaker also must consider—and must address in any decision—whether there is clear and convincing evidence that there are no less-restrictive alternatives to physical detention, including release on bond in an amount the petitioner can reasonably afford, with or without conditions, that also would reasonably address those same regulatory purposes.

## IV.    LIMIT ON TRANSFERRING FORBES

Forbes also has asked this Court to order the respondents and their "agents not to remove [him] from the jurisdiction of this Court during the duration of the consideration of this petition."  Docket Item 1 at 11.

18

Now that this Court has conditionally granted Forbes's writ, his jurisdictional concerns are not unreasonable.  After all, "conditional writs 'would be meaningless' if a habeas court could not determine compliance with them and order sanctions accordingly."  *Mason v. Mitchell*, 729 F.3d 545, 549 (6th Cir. 2013) (quoting *Satterlee v. Wolfenbarger*, 453 F.3d 362, 368 n.5 (6th Cir. 2006)).  But "[it] is well established that jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change."  *See Santillanes v. U.S. Parole Comm'n*, 754 F.2d 887, 888 (10th Cir. 1985).  In other words, regardless of where Forbes is housed, this Court retains jurisdiction over his habeas petition.  So there is no need to interfere with DHS's authority to "arrange for appropriate places of detention" under 8 U.S.C. § 1231(g)(1).

**ORDER**

In light of the above, IT IS HEREBY

ORDERED that **within 14 calendar days of the date of this decision and order**, the government must release Forbes from detention unless a neutral decisionmaker conducts an individualized hearing to determine whether his continued detention is justified; and it is further

ORDERED that at any such hearing, the government has the burden of demonstrating by clear and convincing evidence that Forbes's continued detention is necessary to serve a compelling regulatory purpose, such as minimizing risk of flight or danger to the community. Whether detention is necessary to serve a compelling regulatory purpose requires consideration of whether a less-restrictive alternative to detention would also address the government's interests. In other words, the decisionmaker must find that no condition or combination of conditions of release can reasonably ensure Forbes's appearance and the safety of the community—that is, even with conditions, Forbes presents an identified and articulable risk of flight or a threat to an individual or the community; and it is further

ORDERED that **within 30 days of the date of this decision and order** the government shall file an affidavit certifying compliance with this order. That affidavit

should include a copy of the bond hearing order.


       SO ORDERED.

Dated:      April 23, 2021
              Buffalo, New York


                                      _____
                                    LAWRENCE J. VILARDO
                                    UNITED STATES DISTRICT JUDGE